**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

ROGER NELSON,

                                        Civil No. 21-2679 (JRT/ECW)
                        Plaintiff,

v.                                      **MEMORANDUM OPINION AND ORDER**
                                        **GRANTING IN PART AND DENYING IN**
ERIC ROBERT JERENTOSKY,                 **PART DEFENDANT'S MOTION TO**
                                        **DISMISS**
                        Defendant.


Roger Nelson, 11122 Orange Drive, Whittier, CA 90606, *pro se* plaintiff.

Kurt W. Porter, **SEVERSON PORTER LAW**, 319 South Sixth Street, Brainerd, MN 56401; Christopher L. Johnson, **JOHNSON & ASSOCIATES, ATTORNEYS AT LAW PLLC**, 202 East Main Street, Suite 100, League City, TX 77573, for defendant.


Plaintiff Roger Nelson and Defendant Eric Jerentosky owned a company named Lakes Area Fabrication, LLC ("Lakes"). Jerentosky allegedly structured a transaction in which Lakes would be sold to Consolidated Container Company, LLC ("Consolidated") and then Jerentosky and Consolidated would form a new company named Container Experts that would then itself eventually be sold. Nelson alleges that Jerentosky told Nelson that he would receive a portion of the proceeds of the sale of Container Experts. Nelson filed this action alleging four counts against Jerentosky—(1) breach of fiduciary duty, (2) fraudulent misrepresentation, (3) breach of contract, and (4) promissory estoppel— claiming that although Container Experts was sold, Nelson has not been paid as

Jerentosky promised.  According to Nelson, he has not been paid because Jerentosky structured the transaction to cut Nelson out while Jerentosky captured the proceeds. Jerentosky filed a Motion to Dismiss all four claims brought against him pursuant to Federal Rule of Civil Procedure 12(b)(6).

Because the Amended Complaint plausibly alleges the elements of each claim and does not establish on its face that the statute of limitations bars Nelson's claims, the Court will deny much of Jerentosky's Motion to Dismiss.  The Court will deny the Motion entirely as it pertains to the fraudulent misrepresentation, breach of contract, and promissory estoppel claims.  Although the Court will not dismiss to the breach of fiduciary duty claim entirely, the Court will grant Jerentosky's Motion and limit this claim to the extent that the Amended Complaint purports that a breach arose out of a principal-agent relationship as the Amended Complaint insufficiently alleges that such a relationship existed.

## BACKGROUND

### I.  FACTUAL HISTORY

In 2007, Nelson and Jerentosky started Lakes as a Minnesota limited liability company ("LLC") with each owning 50 percent of the company.  (Am. Compl. ¶¶ 5–6, 9, Jan. 11, 2022, Docket No. 9.)  They allegedly divided up their responsibilities with Nelson primarily handling the manufacturing side and Jerentosky handling the finances, design, and paperwork side of the company.  (*Id.* ¶ 7.)

In 2013, Nalco, an Ecolab Company, approached Lakes to build three facilities for Nalco in Louisiana, Ohio, and Texas.  (*Id.* ¶ 10.)  Because Lakes did not have the ability to

perform the work on its own, it sought partners to assist with the work.  (*Id.* ¶ 11.)  Nelson alleges that Jerentosky, on behalf of Lakes and Nelson, met with Consolidated to discuss and agreed to a deal.  (*Id.* ¶ 12.)

Nelson alleges that after Jerentosky met with Consolidated he told Nelson that (1) he reached an agreement to sell Lakes to Consolidated, (2) Nelson and Jerentosky would each own 16.65 percent (or about one-sixth) of a new company called Container Experts, (3) this company would build the facilities for Nalco, (4) Container Experts would be sold once the facilities were built, and (5) Nelson and Jerentosky would each receive 16.65 percent of the sale proceeds.  (*Id.* ¶ 20.)  This conversation allegedly took place in 2013 at Lakes's office.  (*Id.*)

According to the Amended Complaint, Jerentosky and Consolidated reached a different agreement wherein (1) Consolidated would purchase Lakes, (2) Consolidated and Jerentosky would form a new company (3) that would then be sold after the work for Nalco was completed, and (4) Jerentosky would receive one-third of the sale price.  (*Id.* ¶¶ 14–15, 18.)  This agreement thus excluded Nelson.  (*Id.* ¶ 13.)

Consolidated purchased Lakes in 2013 and Consolidated and Jerentosky formed a new company called Container Experts which was an assumed name of three Minnesota LLCs—Consolidated Container of Louisiana, LLC; Consolidated Container of Ohio, LLC; and Consolidated Container of Texas, LLC—wholly owned by Consolidated.  (*Id.* ¶¶ 14, 16–17.)

From 2013 until at least 2017, Jerentosky allegedly tried to prevent Nelson from discovering the true nature of the transaction including telling Nelson that he was in fact an owner of Container Experts, including saying this in front of Consolidated's office staff. (*Id.* ¶ 22.)

Container Experts built the facilities for Nalco and Nelson worked on this project based upon Jerentosky's alleged representations and Nelson's belief that he owned part of Container Experts and would receive his one-sixth share of the sale proceeds. (*Id.* ¶¶ 21, 23.)

In 2020, Container Experts was sold to QualaWash. (*Id.* ¶ 24.) Nelson alleges that Jerentosky received one-third of the Container Experts sale price, but that Jerentosky has refused to in turn pay Nelson his share of the proceeds. (*Id.* ¶¶ 25–26.)

## II.   PROCEDURAL HISTORY

On June 17, 2021, Nelson initiated this action in state court. (Notice of Removal ¶ 1, Dec. 15, 2021, Docket No. 1.) Jerentosky removed the case to federal court, invoking the Court's diversity jurisdiction. (*See id.* ¶ 13.)

Jerentosky then filed a Motion to Dismiss. (1st Mot. Dismiss, Dec. 22, 2021, Docket No. 4.) Nelson filed an Amended Complaint. (Am. Compl.) This now operative complaint asserts four claims against Jerentosky under Minnesota law: (1) breach of fiduciary duties, (2) fraudulent misrepresentation, (3) breach of contract, and (4) promissory estoppel. (*Id.* ¶¶ 27–48.)

-4-

Jerentosky filed a new Motion to Dismiss all four claims against him in the Amended Complaint.  (2nd Mot. Dismiss, Jan. 25, 2022, Docket No. 11.)

## DISCUSSION

## I.    STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor, accepting the complaint's factual allegations as true and drawing all inferences in the plaintiff's favor.  *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018); *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  For claims sounding in state law, the Court applies the Federal Rules of Civil

Procedure's pleading standards to the substantive state law. *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013).

In reviewing a Rule 12(b)(6) motion to dismiss, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).[1]

## II.   ANALYSIS

### A.   Breach of Fiduciary Duty Claim

Nelson asserts a breach of fiduciary duty claim alleging that Jerentosky breached this duty by making a deal that benefited Jerentosky without benefiting Nelson and by making false representations as to the nature of the deal.  To recover for breach of fiduciary duty under Minnesota law, a plaintiff must prove the existence of a fiduciary duty, breach of that duty, causation, and damages.  *See Hansen v. U.S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 327 (Minn. 2019).

Jerentosky contends that Nelson fails to properly allege that Jerentosky owed him any fiduciary duties through a principal-agent relationship.  Under Minnesota law, a "principal-agent relationship results from the manifestation of consent by one person to

---

[1] Nelson is currently proceeding as a pro se litigant.  Pleadings submitted by pro se litigants are to be liberally construed and must be held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Nelson, however, was represented by a lawyer when he filed his Amended Complaint and for the purposes of this Motion.  (Order Granting Mot. Withdraw, June 3, 2022, Docket No. 31.)  Therefore, all pleadings relevant to this Motion were drafted by a lawyer, and the Court will not apply this liberal, less stringent standard here.

another that the other shall act on the first person's behalf and subject to his control; and

the other must consent so to act." *White v. Boucher*, 322 N.W.2d 560, 566 (Minn. 1982).

Although it is irrelevant whether the parties call it an agency relationship or even whether

the parties intended the legal consequences of an agency relationship, there must be

agreement by both parties to the principal-agent relationship. *A. Gay Jenson Farms Co.*

*v. Cargill, Inc.*, 309 N.W.2d 285, 290 (Minn. 1981).  The Amended Complaint alleges that

Jerentosky met with Consolidated "on behalf of" and as an agent of Nelson.  (Am. Compl.

¶¶ 12-13.)   These, however, are merely labels and legal conclusions asserting the

existence of an agency relationship.  The Amended Complaint does not allege any actual

facts supporting a reasonable inference that Nelson manifested consent to Jerentosky

acting as his agent or that Jerentosky consented to do so.   Indeed, the Amended

Complaint never asserts that they had any communications, let alone indications of

consent, regarding Jerentosky's ability to act on behalf of and subject to Nelson's control.

Without any alleged facts that could allow the Court to draw a reasonable inference that

there was such an agreement, Nelson's breach of fiduciary duty claim cannot proceed on

a theory that there was a principal-agent relationship between Nelson and Jerentosky.[2]

Drawing all reasonable inferences in Nelson's favor, however, Nelson plausibly

alleges a different source of a fiduciary duty that Jerentosky allegedly breached: their

---

[2] Because, as discussed below, Nelson does not bring a claim on behalf of Lakes, the Court does not decide whether the Amended Complaint adequately alleges the existence of a principal-agent between Lakes and Jerentosky.

relationship as members of an LLC.  Under Minnesota law, members of an LLC owe various fiduciary duties to each other.[3]  The Amended Complaint alleges sufficient facts to conclude that they were members of the same two-member LLC.  Therefore, even if Jerentosky was not Nelson's agent for purposes of discussing a possible arrangement with Consolidated, Jerentosky still had various duties to Nelson.  The Amended Complaint also sufficiently alleges that Jerentosky breached these duties (1) by misrepresenting the nature of the transaction with Consolidated and how it would affect Nelson and (2) by the nature of the transaction itself—benefiting Jerentosky to the exclusion of Nelson.  The Amended Complaint also sufficiently alleges this caused pecuniary harms to Nelson as the agreements led Nelson to not receive value for the company and Nelson's belief in the nature of the agreements led Nelson to engage in additional work based on an allegedly false understanding.

_____

[3] Effective August 1, 2015, the Minnesota legislature replaced the statute governing LLCs as previously codified at Minnesota Statutes Chapter 322B with a new statute governing LLCs now codified at Minnesota Statutes Chapter 322C.  2014 Minn. Laws ch. 157, art. 1, §§ 91–92, at 62.  As Lakes was formed and much of the alleged conduct occurred before August 1, 2015, it is unclear exactly which version applies here and to what parts of the claims.  *See Doornbos v. Yaedke*, No. A20-0111, 2020 WL 5757473, at *3–5 (Minn. Ct. App. Sept. 28, 2020) (noting that it is unclear whether Chapter 322B or 322C applies to certain claims and analyzing a motion to dismiss under both chapters).

Both statutes indicate that members directly owe certain duties to other members. Under Chapter 322B, members "owe one another [a duty] to act in an honest, fair, and reasonable manner."  Minn. Stat. § 322B.833, subd. 4 (2012) (repealed effective August 1, 2015). Under Chapter 322C, members owe "the other members the fiduciary duties of loyalty and care." Minn. Stat. § 322C.0409, subd. 1 (2021).  As neither party contends that it makes a relevant difference to the outcome of this Motion or otherwise argue which law applies and both statutes create duties that may be implicated here, the Court will not resolve this issue at this time.

Jerentosky contends that to the extent the Amended Complaint alleges a breach it is based on usurping a corporate opportunity and any breach of duty claims are based on duties owed to Lakes, not Nelson, and so this claim must be brought as a derivative claim for Lakes, rather than as the direct action Nelson presents here.  When analyzing whether a complaint alleges a derivative or direct injury under Minnesota law, courts "look not to the theory in which the claim is couched, but instead to the injury itself."  *Wessin v. Archives Corp.*, 592 N.W.2d 460, 464 (Minn. 1999); *see also Lusk v. Life Time Fitness, Inc.*, 213 F. Supp. 3d 1119, 1134–35 (D. Minn. 2016).  "[W]hen shareholders are injured only indirectly, the action is derivative; when shareholders show an injury that is not shared with the corporation, the action is direct."  *In re Medtronic, Inc. S'holder Litig.*, 900 N.W.2d 401, 409 (Minn. 2017).  The Amended Complaint alleges a direct injury to Nelson.  The Complaint alleges that when Jerentosky negotiated a deal with Consolidated, he reached a deal that solely benefited himself and left Nelson with nothing.  Because Nelson allegedly received nothing for his ownership stake and the work he did, this is a direct harm to Nelson as he, not Lakes, would be entitled to recover a better value from the transaction.  *See Lusk*, 213 F. Supp. 3d at 1135 (citing *Parnes v. Bally Ent. Corp.*, 722 A.2d 1243, 1245 (Del. 1999)).  Moreover, Nelson alleges that Jerentosky breached his duty to deal honestly with Nelson by making false representations to Nelson about his personal interests and stake, not any possible interest Lakes had.  Thus, although the source of

Jerentosky's duties is through their membership in an LLC, Nelson plausibly alleges direct injuries that he can maintain in his own name.

In sum, drawing all inferences in Nelson's favor as the Court must at this stage, the Amended Complaint plausibly alleges sufficient facts to support the conclusion that Jerentosky owed Nelson fiduciary duties based on their relationship as members of the relevant LLC, that he breached those duties, and caused a direct harm to Nelson. Therefore, the Court will deny the Motion with regard to this claim in part. The Amended Complaint, however, does not plausibly allege the existence of a principal-agent relationship between Nelson and Jerentosky. Thus, the Court will grant the Motion in part and dismiss Nelson's claim to the extent that it alleges a breach of fiduciary duties predicated on a principal-agent relationship.

### B.   Sufficiency of Pleading Fraudulent Misrepresentation

Nelson brings a claim for fraudulent misrepresentation against Jerentosky. Jerentosky contends any claim sounding in fraud must dismissed because the Amended Complaint does not allege fraud with sufficient particularity under Federal Rule of Civil Procedure 9(b).

Under Minnesota law, fraudulent misrepresentation requires a plaintiff to plead and prove:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in

> reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.

*Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010) (quoting *Hoyt Properties, Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007)) (alteration in original).

When alleging a claim sounding in fraud, the plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* "The complaint must plead such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby. The complaint must plead the 'who, what, where, when, and how' of the alleged fraud." *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 421 (8th Cir. 2020). Allegations based on information and belief are typically insufficient to meet this requirement. *Id.* One exception to this general rule is when the necessary facts are "peculiarly within the opposing party's knowledge," but then the complaint must allege "the source of the information and the reasons for the belief." *Id.* (citations omitted).

The Amended Complaint sufficiently alleges each element with particularity. First, the Amended Complaint alleges that Jerentosky told Nelson he had reached an agreement wherein Nelson would receive an ownership interest in Container Experts and that they would be paid out their share upon its sale. While the agreement affected the future, the statement was allegedly false at the time it was made because Jerentosky

made a different agreement prior to the statement.  Second, it alleges Jerentosky knew it was false because he was the one who made the agreement that differed from what he reported to Nelson.  Third, although the Amended Complaint does not explicitly label Jerentosky's intent to induce Nelson to act in reliance on these statements in the fraudulent misrepresentation context, a reasonable inference can readily be drawn from the Amended Complaint that this was Jerentosky's intent.  *See Iqbal*, 556 U.S. at 678.  It alleges that (1) Nelson provided the manufacturing knowledge, skill, and experience necessary to carry out projects like the one for Nalco; (2) the parties and Lakes sought other partners to complete the Nalco projects; (3) Jerentosky engaged with other potential partners; and (4) Jerentosky repeatedly made various statements repeating the promises both before and while Nelson worked on the projects.  Although a factfinder may find that this is insufficient to establish intent to induce reliance, it is sufficient to reasonably infer it at this stage.  Moreover, intent need only be alleged generally at this stage.  Fourth, the Amended Complaint alleges that Nelson did in fact rely on these statements by doing the work necessary to complete the projects for which they sought out other partners.  Finally, it alleges Nelson suffered pecuniary harm by not receiving the compensation he believed he would based on his reliance.  The Amended Complaint also alleges the "who, what, where, when, and how."  It alleges Jerentosky made the statements to Nelson in and around 2013 continuing through 2017 at Lakes's and then Consolidated's headquarters in Minnesota including sometimes in front of other people.

-12-

While some allegations touching on the fraudulent misrepresentation claim are made based on information and belief without explaining the source or reasons for the information and beliefs, these allegations are not necessary to form the elements of fraudulent misrepresentation at this stage.

Finally, although it is somewhat unclear, Jerentosky may also contend that Nelson cannot assert the fraudulent representation claim against Nelson because any alleged false statements have to do with actions Consolidated or Containers Experts were supposed to take and Jerentosky could not bind them. However, it is not an element of fraudulent misrepresentation that the false representation must deal with the defendant, that it cannot touch on a third party, or that the defendant must be able to hold a third party to the representation the defendant makes. *See Trooien*, 608 F.3d at 1028.

Because the Amended Complaint's sufficiently pleads the fraudulent misrepresentation claim under Rules 9(b) and 12(b)(6), the Court will deny the Motion to Dismiss this claim.

### C. Breach of Contract and Promissory Estoppel Claims

The Amended Complaint asserts claims for breach of contract and promissory estoppel against Jerentosky. Jerentosky argues these claims must be dismissed against him because even if a contract was formed or a promise was made, the contract was formed with or the promise was made by Consolidated and/or Container Experts. Although these contentions may in fact be true and may be inferences one could reasonably draw from the Amended Complaint, at this stage the Court must accept the

allegations in the Amended Complaint as true and construe them in the light most favorable to Nelson.

To maintain a breach of contract claim, a plaintiff must properly plead the formation of a contract between the plaintiff and the defendant, among other elements.[4] *See Lyon Fin. Servs., Inc. v. Illinois Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014). Formation of a contract requires (1) an offer, (2) acceptance of the offer, and (3) consideration. *Jalin Realty Cap. Advisors, LLC v. A Better Wireless, NISP, LLC*, 917 F. Supp. 2d 927, 944 (D. Minn. 2013) (citing *Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn. Ct. App. 2008)).   Construed in the light most favorable to Nelson, the Amended Complaint alleges each element.   The Amended Complaint alleges Jerentosky approached Nelson to propose that Nelson would give up his ownership stake in Lakes, Nelson would work on the projects, and Nelson would be paid 16.65 percent of the sale price of Container Experts.   It later alleges that Jerentosky received the value that included Nelson's share of the sale, but that Jerentosky did not pay Nelson.   A reasonable inference from the Amended Complaint is that as part of the offer Jerentosky—not Consolidated or Container Experts—would pay Nelson.   It is further reasonable to infer that Nelson accepted this offer as Nelson allegedly completed his work building out the facilities.   Finally, Jerentosky asserts that there was no consideration

---

[4] At this stage, Jerentosky does not contend that even if the Amended Complaint properly alleges the existence of a contract, it fails to allege the other elements of breach of contract. Therefore, the Court will not address the other elements.

between Nelson and Jerentosky because the work Nelson was to perform was for Consolidated or Container Experts, not Jerentosky. The reasonable inference that Jerentosky would pay Nelson and Nelson would work on the projects is sufficient consideration because both are something of value each party is giving up. *See Powell v. MVE Holdings, Inc.*, 626 N.W.2d 451, 463 (Minn. Ct. App. 2001). A reasonable inference is that they formed something similar to a general contractor-subcontractor relationship wherein Jerentosky arranged the project and Nelson then carried out the work. That Consolidated or Container Experts received the ultimate benefit and paid the value that was allegedly supposed to flow down to Nelson does not eliminate the relationship between Nelson and Jerentosky. As the Amended Complaint properly alleges the formation of a contract between Nelson and Jerentosky, the Court will not dismiss the breach of contract claim.

To maintain a promissory estoppel claim, a plaintiff must properly plead the defendant made a clear and definite promise to the plaintiff, among other elements.[5] *See Hous. & Redevelopment Auth. of Chisholm v. Norman*, 696 N.W.2d 329, 336 (Minn. 2005). Like his arguments against the breach of contract claim, Jerentosky contends that for the promissory estoppel claim, to the extent there was a promise, (1) it was not clear and definite and (2) any promise must have been made by and so must be enforced against

---

[5] Like the breach of contract claim, Jerentosky does not contend that the Amended Complaint does not allege the other elements of promissory estoppel. Therefore, the Court also will not address them.

Consolidated or Container Experts, not him.  Jerentosky contends it was not clear and definite because it was unclear what ownership interest Nelson would take in part because only Container Experts could consent to this and because it was unclear what exactly Nelson had to do to receive the benefits of the promises.  Receiving a 16.65 percent ownership interest in a clearly specified company is a clear and definite promise. Even if this were insufficiently clear and definite, the promise allegedly included Nelson receiving 16.65 percent of the Container Experts sale price.  While the precise dollar amount and timing may have been unknown, this is a clear and definite benefit.  It was not "only a general framework for compensating" Nelson.  *Martens v. Minnesota Min. & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000).  Construed in the light most favorable to Nelson, it was also clear and definite what he had to do to receive the benefit of this promise: complete the three clearly defined projects Nalco had approached Lakes to complete.  A promise for a set amount of a future sale for the completion of a defined scope of work is the type of promise on which one could reasonably expect to induce reliance as it would be relatively easy to determine if the promise was violated.  *See id.* at 746 & n.27.  Finally, much like the breach of contract claim, it is reasonable to infer Jerentosky was responsible for providing the promised benefit—paying the share of the sale proceeds—to Nelson even if the benefit first had to flow from Container Experts to Jerentosky.  As the Amended Complaint properly alleges the existence of clear and

definite promise between Nelson and Jerentosky, the Court will not dismiss the promissory estoppel claim.

Nelson's breach of contract and promissory estoppel claims may in fact be predicated on an attempt to rewrite history and create facts that did not occur as Jerentosky contends.  It is possible that Consolidated and/or Container Experts—not Jerentosky—were parties to the purported contract or made the relevant promise.  Assessing the truth of the facts alleged, however, is beyond the scope of this Motion to Dismiss as the Court must accept as true the factual allegations in the Amended Complaint.

### D.     Statute of Limitations

Finally, Jerentosky contends that Nelson's claims are barred by a six-year statute of limitations.

A motion to dismiss is typically not the proper stage to resolve whether a claim is barred by a statute of limitations.  *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008).  A statute of limitations issue is an affirmative defense, and the burden is on defendants to plead and prove bar by statutes of limitations.  *Id.*; *see also John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008); Fed. R. Civ. Pro. 8(c).[6]  There are, however, exceptions to this general rule.

---

[6] Minnesota law also treats bar by statute of limitations as an affirmative defense and takes a similar approach as federal courts at this stage, requiring a finding that it is clear from the

Dismissal of a claim as barred by a statute of limitations may be proper "if the complaint itself shows that the claim is time-barred." *Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897 (8th Cir. 2015); *Jessie*, 516 F.3d at 713 n.2 ("[T]he possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense."). A complaint establishes the statute of limitations defense "if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (cleaned up).

"To determine whether a 'complaint is self-defeating based on a statute of limitations,' a court must identify the relevant limitations period, the date the action was commenced, and the date the plaintiff's claims accrued." *Untiedt's Vegetable Farm, Inc. v. S. Impact, LLC*, 493 F. Supp. 3d 764, 767 (D. Minn. 2020) (quoting *Int'l Decision Sys., Inc. v. JDR Sols., Inc.*, No. 18-2951, 2019 WL 2009249, at *3 (D. Minn. May 7, 2019)).

The parties do not dispute that a six-year statute of limitations applies. *See* Minn. Stat. § 541.05, subd. 1 (2021). And to the extent the claims are based in fraud, the six years does not begin "until the discovery by the by the aggrieved party of the facts constituting the fraud." Minn. Stat. § 541.05, subd. 1(6) (2021). Nelson filed this case in state court on June 17, 2021. Therefore, the issue is whether the Amended Complaint

---

complaint that a claim is time-barred before granting a motion to dismiss on statute of limitations grounds. *Hansen*, 934 N.W.2d at 326.

establishes on its face that Nelson's claims accrued by June 17, 2015. Jerentosky claims the causes of action accrued no later than the end of 2013 because the relevant actions that led to this lawsuit occurred in 2013 and Nelson should have discovered with reasonable diligence any fraud claims more than six years before filing this action.

Minnesota law dictates when each cause of action accrued. *Klempka v. G.D. Searle & Co.*, 963 F.2d 168, 170 (8th Cir. 1992). "Accrual refers to the point in time when a plaintiff can allege sufficient facts to survive a motion to dismiss for failure to state a claim upon which relief can be granted." *Hansen*, 934 N.W.2d at 327 (citation omitted) (internal quotation marks omitted). Therefore, a cause of action does not accrue until facts supporting each element of the cause of action exists. *Id.*

For the breach of fiduciary duty claim, Minnesota follows a "some damage" rule for accrual, meaning that the claim accrues once "any compensable damage" has occurred as a result of the defendant's actions even if the plaintiff is not yet aware of all operative facts. *Id.* When a harm is financial, the claim only accrues when the harm is concrete and noncontingent meaning the plaintiff has actually lost money or suffered financial harm as a result of the breach even if the exact amount is not ascertainable. *Id.* at 328. As long as the financial harm is merely contingent and has not occurred, the claim does not accrue. *Id.* at 329. The Amended Complaint alleges that Nelson was to receive 16.65 percent of the proceeds of the sale of Container Experts. The sale allegedly did not

occur until 2020.  So, the breach of fiduciary duty cause of action accrued no earlier than the contingency of selling Container Experts occurred in 2020.  *See id.*

Under Minnesota law, a breach of contract claim "accrues at the time of the breach, even though actual damages occur later."  *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 710 (8th Cir. 2016).  According to the Amended Complaint, Jerentosky breached the contract by failing to pay Nelson and Jerentosky only had to pay Nelson upon the sale of Container Experts.  As this did not occur until 2020, the breach of contract claim did not accrue until 2020.

Similarly, for the promissory estoppel claim, the Amended Complaint alleges Jerentosky promised to pay Nelson his share upon the sale of Container Experts. Therefore, it only became allegedly necessary to enforce this promise to prevent injustice in 2020, triggering the statute of limitations at that time.  *See Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 834 (Minn. 2011).

The fraudulent misrepresentation claim has an additional complication.  For claims based on fraud, "the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."  Minn. Stat. § 541.05, subd. 1(6).  The Amended Complaint does not establish that Nelson had actual knowledge of the fraud by June 17, 2015.  Jerentosky, however, argues that discovery does not mean actual knowledge of the fraud but rather when the plaintiff should have discovered the facts constituting the fraud through the exercise of reasonable diligence.  *See Toombs v.*

*Daniels*, 361 N.W.2d 801, 809 (Minn. 1985); *Bustad v. Bustad*, 116 N.W.2d 552, 555 (Minn. 1962) ("[T]he mere fact that the aggrieved party did not actually discover the fraud will not extend the statutory limitation, if it appears that the failure sooner to discover it was the result of negligence, and inconsistent with reasonable diligence." (quoting *First Nat'l Bank v. Strait*, 73 N.W. 645, 646 (Minn. 1898)). Whether a party exercised reasonable diligence is normally a question of fact unsuited for summary judgment, much less a motion to dismiss. *See Hines v. A.O. Smith Harvestore Prods., Inc.*, 880 F.2d 995, 999 (8th Cir. 1989); *see also Toombs*, 361 N.W.2d at 809 ("The time when fraud reasonably should have been discovered is also a question of fact."). Despite this, Jerentosky asserts several facts he claims support the Court finding Nelson did not exercise reasonable diligence at this stage. Even if these facts could establish that as a matter of law that Nelson did not exercise reasonable diligence—something the Court does not decide here—these facts are found nowhere in the Amended Complaint and so cannot be used to show the Amended Complaint establishes them. Therefore, although at a later stage it may become clear that Nelson should have discovered through reasonable diligence the alleged fraudulent misrepresentation by June 17, 2015, the Amended Complaint does not clearly establish that this is so.

As the Amended Complaint does not establish all the facts necessary to demonstrate the statute of limitations began running more than six years before Nelson

filed this case, the Court will not grant the Motion to Dismiss based on the statute of limitations.

## CONCLUSION

The Court will to a great extent deny Jerentosky's Motion to Dismiss.  Although there may be much truth to the factual arguments he makes in support of his Motion, these facts are outside of and not embraced by the Amended Complaint or are otherwise issues for a factfinder to resolve at a later stage.  The Amended Complaint sufficiently alleges the elements of each claim and does not establish that the statute of limitations expired on the claims.  The Court, however, will grant the Motion to the extent that the Amended Complaint alleges a breach of fiduciary duty predicated on a principal-agent relationship as the Amended Complaint alleges mere labels and conclusions in support of this theory, not actual facts that can support the conclusion that Nelson and Jerentosky established a principal-agent relationship.  Because the Amended Complaint properly alleges another theory which gives rise to fiduciary duties, this claim can proceed on this theory.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motions to Dismiss [Docket Nos. 4 & 11] are **GRANTED in part and DENIED in part** as follows:

1. **GRANTED** with respect to Count I for breach of a fiduciary duty predicated on a principal-agent relationship;

2. **DENIED** with respect to Count I for breach of a fiduciary duty predicated on the parties' membership in a limited liability company; and

3. **DENIED** as to Counts II, III, and IV.

DATED:  September 26, 2022
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge